# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEOFFREY L. MCCABE,<br><br>　　　　　　　　　Plaintiff,<br>　vs.<br><br>FLOYD ROSE GUITARS; FLOYD ROSE MARKETING INC.; FLOYD D. ROSE; DAVITT & HANSER MUSIC CO.; PING WELL INDUSTRIAL CO.; AP GLOBAL ENTERPRISES INC.; SCHALLER ELECTRONIC GMBH; LERNER, DAVID, LITTENBERG, KRUMHOLZ AND MENTLIK, LLP; and DOES 1–10, INCLUSIVE,<br><br>　　　　　　　　　Defendant. | CASE NO. 10CV581 JLS (JMA)<br><br>**ORDER (1) GRANTING MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND (2) DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>(ECF No. 98) |

　　　Presently before the Court is Defendants' motion to dismiss. (Mot. to Dismiss, ECF No. 98) Also before the Court are Plaintiff Geoffrey L. McCabe's ("McCabe") opposition, (Resp. in Opp'n, ECF No. 109), and Defendants' reply, (Reply in Supp., ECF No. 114). The hearing set for the motion on February 23, 2012, was vacated, and the matter taken under submission on the papers. Having considered the parties' arguments and the law, the Court **GRANTS** Defendants' motion to dismiss for failure to state a claim and **DENIES** Defendants' motion to dismiss for lack of personal jurisdiction.

//

- 1 -

**BACKGROUND**

This Order incorporates by reference the factual and procedural background as set forth in this Court's October, 17, 2011, Order dismissing without prejudice the sixth through eighth claims of McCabe's First Amended Complaint. (Order, Oct. 17, 2011, ECF No. 87) McCabe filed his Second Amended Complaint ("SAC") on October 31, 2011, (SAC, ECF No. 91), adding to the already-long list of defendants Lerner, David, Littenberg, Krumholz & Mentlik LLP ("Lerner David"), intellectual property counsel for the Floyd Rose Defendants, (*see id.* ¶¶ 16–22). In the instant motion to dismiss, Defendants again move to dismiss the sixth through eighth claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, and also move to dismiss Defendant Lerner David pursuant to Rule 12(b)(2) for lack of personal jurisdiction.

**LACK OF PERSONAL JURISDICTION**

**1. Legal Standard**

Federal Rule of Civil Procedure 12(b)(2) allows a district court to dismiss an action for lack of personal jurisdiction. "Where defendants move to dismiss a complaint for lack of personal jurisdiction, plaintiffs bear the burden of demonstrating that jurisdiction is appropriate." *Dole Food Co. Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). "The court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (citing *Data Disc, Inc. v. Sys. Tech. Ass'n, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "When a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand a motion to dismiss." *Id.* (citing *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995)); *see also Data Disc*, 557 F.2d at 1285 ("[I]t is necessary only for [the plaintiff] to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.").

"Unless directly contravened, [Plaintiff's] version of the facts is taken as true, and 'conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citing

*Unocal Corp.*, 248 F.3d at 922); *see also Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) ("Because the prima facie jurisdictional analysis requires us to accept the plaintiff's allegations as true, we must adopt [Plaintiff]'s version of events."), *overruled in part on other grounds by Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (en banc). However, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Alexander v. Circus Enters., Inc.*, 972 F.2d 261, 262 (9th Cir. 1992) (internal quotations omitted).

California's long-arm jurisdictional statute permits the exercise of personal jurisdiction so long as it comports with federal due process. *See* Cal. Civ. Proc. Code § 410.10; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Fred Martin Motor*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)).

**2. Analysis**

McCabe argues that Lerner David—a limited liability partnership of the state of New Jersey, and having its principal place of business in New Jersey, (SAC ¶ 16, ECF No. 92)—is subject to general or specific jurisdiction in this Court. (Resp. in Opp'n 18–25, ECF No. 109) The Court considers each in turn.

*A. General Jurisdiction*

"For general jurisdiction to exist over a nonresident defendant . . . the defendant must engage in continuous and systematic general business contacts . . . that approximate physical presence in the forum state." *Fred Martin Motor*, 374 F.3d at 801 (internal quotation marks omitted) (citations omitted). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters*, 223 F.3d at 1086.

//

"Even when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its *in personam* jurisdiction when there are sufficient contacts between the State and the foreign corporation." *Helicopteros Nacionales De Colom. v. Hall*, 466 U.S. 408, 414 (1984) (footnote omitted) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). The assertion of general jurisdiction must nevertheless be reasonable. *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 852–53 (9th Cir. 1993).

McCabe alleges that Lerner David has "systematic and continuous" contacts with the state of California by virtue of the fact that the firm serves as intellectual property counsel for the California-based Floyd Rose Defendants and other California entities, (SAC ¶ 25–26, ECF No. 92); (Mot. to Dismiss 16, ECF No. 98); that attorneys from the firm have traveled to California to negotiate licenses on behalf of then-California-resident Mr. Rose, (SAC ¶ 83, ECF No. 92); that the firm regularly solicits and conducts business in California with California entities, (*id.* ¶ 17); that attorneys from the firm regularly attend the annual National Association of Music Merchants ("NAMM") show in Anaheim, California, (*Id.* ¶ 17); that attorneys from the firm are licensed to practice law in California and have represented Mr. Rose in other offensive litigation matters in California federal courts, (*id.* ¶¶ 19–20); and that the firm received shares of stock in a California-based corporation for work done to obtain and sell Mr. Rose's patents, (*id.* ¶ 21).

The Court finds these alleged contacts insufficient to confer general personal jurisdiction over Lerner David.[1] The strongest alleged connection between Lerner David and California is that the firm "regularly solicits and conducts business in California with California entities." (*Id.* ¶ 17) But this allegation is directly contravened by John Nelson's ("Nelson") declaration, which states that "Lerner David . . . does not regularly solicit business in California with California entities." (Mot. to Dismiss Ex. 1 ¶ 4, ECF No. 98-1) McCabe does not offer a competing declaration to

---

[1] None of the three cases McCabe cites to help to persuade the Court of his general personal jurisdiction argument. One, *Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072 (9th Cir. 2003), was later vacated, 366 F.3d 789 (9th Cir. 2004), and decided on entirely different grounds upon rehearing en banc, 398 F.3d 1125 (9th Cir. 2005). The other two, *Simons v. Steverson*, 106 Cal. Rptr. 193 (Cal. Ct. App. 2001), and *Brown v. Watson*, 255 Cal. Rptr. 507 (Cal. Ct. App. 1989), both found that there were insufficient contacts with California to confer general jurisdiction over the defendants. Jurisdiction in those cases was founded on specific—not general—jurisdictional grounds.

bolster this otherwise unsupported allegation of the complaint. Further, though Lerner David admits that its attorneys have attended the NAMM show in California, the firm denies and McCabe does not allege that their presence there was for the purpose of soliciting business. *See* (*id.* ¶ 7); (SAC ¶ 17, ECF No. 92)

Moreover, the fact that Lerner David attorneys are licensed in California or have appeared in California courts pro hac vice does not convince the Court that Lerner David's contacts are so systematic and continuous that general jurisdiction is appropriate. *See, e.g.*, *Crea v. Busby*, 55 Cal. Rptr. 2d 513, 516 (Cal. Ct. App. 1996). And although Lerner David has received compensation in the form of stock in a California entity, the work relating to that compensation "was performed outside of and unrelated to California." (Mot. to Dismiss Ex. 1 ¶ 8, ECF No. 98-1)

The final two asserted contacts—that Lerner David serves as patent counsel and negotiates licenses on behalf of California entities—are also insufficient to justify the existence of general jurisdiction. These contacts are nevertheless relevant to the specific jurisdiction analysis.

### B. Specific Jurisdiction

"Specific jurisdiction exists where the cause of action arises out of or has substantial connection to the defendant's contact with the forum." *ChemRisk, LLC v. Chappel*, 2011 U.S. Dist. LEXIS 50997, at *8 (N.D. Cal. May 12, 2011) (internal quotations omitted) (citations omitted). In analyzing claims of specific jurisdiction, the Ninth Circuit applies a three-prong test:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or related to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice.

*Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Fred Martin Motor*, 374 F.3d at 802 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

//

//

*(1) Purposeful Availment*

"The 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Ballard*, 65 F.3d at 1498.  Here, McCabe points to Lerner David's status as intellectual property counsel for California entities, and the fact that Lerner David attorneys are licensed and practice law in California.  (Resp. in Opp'n 23, ECF No. 109)

Although being licensed to practice law in California is insufficient by itself to constitute purposeful availment, *Crea*, 55 Cal. Rptr. 2d at 516, that, combined with Lerner David's admitted representation of California entities, convinces the Court that Lerner David has "purposefully avail[ed] [it]self of the privilege of conducting activities in the forum," *Lake*, 817 F.2d at 1421.

*(2) Relationship Between Claims and Forum-Related Activities*

"To determine whether a claim arises out of forum-related activities, courts apply a 'but for' test." *Unocal Corp.*, 248 F.3d at 924 (citing *Ballard*, 65 F.3d at 1500 (9th Cir. 1995)).  Here, the Court considers whether McCabe's claims would have arisen but for Lerner David's contacts with California.  *See id.*

As to Lerner David's representation of California entities other than any of the Floyd Rose Defendants, those contacts are unrelated to the instant action and are therefore irrelevant to the Court's specific personal jurisdiction analysis.  McCabe contends that his claims "arise out of" Lerner David's forum-related contacts because Lerner David attorneys "travel[ed] to California to negotiate [the] license agreements [at issue in the underlying action] on behalf of their [client,] long-time California resident Rose."  (Resp. in Opp'n 24, ECF No. 109)  Conversely, Defendants barely address whether there can be specific jurisdiction, arguing simply that "[t]he SAC alleges no conduct by Lerner David in California with respect to the patents or transaction that form the basis for McCabe's claims for relief."  (Mot. to Dismiss 16, ECF No. 98); (*see also* Reply in Supp. 10, ECF No. 114 (stating only that "McCabe's claims do not arise from Lerner David's contacts with California")

*//*

*//*

The Court finds Lerner David's contacts with California and California entities in drafting the numerous licensing agreements at issue in this action sufficiently related to the instant claims. Specifically, McCabe alleges that Lerner David assisted in the defrauding of licensees by drafting agreements to license "knowingly non-existent intellectual property rights." (Resp. in Opp'n 24, ECF No. 109 (citing Compl. ¶¶ 256–88, ECF No. 92)) Those agreements are directly at issue in McCabe's statutory unfair competition claim. (*See* Compl. ¶¶ 264–66, ECF No. 92) In other words, "but for" Lerner David's contacts with California in drafting and negotiating these licensing agreements, McCabe's claims would not have arisen.

*(3) Reasonableness*

Finally, the exercise of specific jurisdiction over the defendant must be reasonable. "Once it has been established that a defendant purposefully established minimum contacts with a forum, 'he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable' in order to defeat personal jurisdiction." *Harris Rutsky*, 328 F.3d at 1132 (quoting *Burger King*, 471 U.S. at 477). The Ninth Circuit considers seven factors in weighing reasonableness:

> (1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993). No one factor is dispositive; rather, the Court must balance all seven. *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

Taking the allegations in the complaint as true, these seven factors weigh in favor of asserting jurisdiction. Lerner David has purposefully interjected itself into California through its representation of California clients and attendance at the annual NAMM show. (Mot. to Dismiss Ex. 1 ¶¶ 7–8, ECF No. 98-1) The Court further finds that Lerner David's burden in litigating in California is minimal. Despite being based in New Jersey, "in this era of fax machines and discount air travel" such is not so burdensome, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998), and Lerner David has already appeared as counsel in California courts by

1  appearing pro hac vice, (Mot. to Dismiss Ex. 1 ¶¶ 4–5, ECF No. 98-1).

2  There are no sovereignty concerns, and California's interest is likely stronger than New
3  Jersey's, given that the licensors Lerner David represents are California entities. *See Sinatra v.*
4  *Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199–1200 (9th Cir. 1988). Moreover, because the lawsuit
5  will continue in California with the other defendants, in terms of judicial efficiency California is
6  favored. Finally, as this Court has stated before, because McCabe is a resident of southern
7  California, this forum is the most convenient for him.

8  In sum, after balancing the seven factors, the Court finds that the exercise of personal
9  jurisdiction over Lerner David is reasonable. Accordingly, the motion to dismiss for lack of
10 personal jurisdiction over Lerner David is **DENIED**.

11 **FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**
12 **1. Legal Standard**

13 Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that
14 the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a
15 motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and
16 sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain
17 statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not
18 require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-
19 defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937,
20 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a
21 plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than
22 labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."
23 *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a
24 complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*,
25 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).

26 "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
27 accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*,
28 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts

1  pled "allow[] the court to draw the reasonable inference that the defendant is liable for the
2  misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must
3  be probable, but there must be "more than a sheer possibility that a defendant has acted
4  unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible
5  entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  Further, the Court need not accept
6  as true "legal conclusions" contained in the complaint. *Id.*  This review requires context-specific
7  analysis involving the Court's "judicial experience and common sense." *Id.* at 1950 (citation
8  omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere
9  possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is
10 entitled to relief.'" *Id.*  Moreover, "for a complaint to be dismissed because the allegations give
11 rise to an affirmative defense[,] the defense clearly must appear on the face of the pleading."
12 *McCalden v. Ca. Library Ass'n*, 955 F.2d 1214, 1219 (9th Cir. 1990).

13       Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court
14 determines that the allegation of other facts consistent with the challenged pleading could not
15 possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir.
16 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir.
17 1986)).  In other words, where leave to amend would be futile, the Court may deny leave to
18 amend. *See Desoto*, 957 F.2d at 658; *Schreiber*, 806 F.2d at 1401.

19 **2. Analysis**

20 *A. False Marking*

21       McCabe's sixth claim for relief against all defendants save Lerner David alleges that these
22 defendants "violate and continue to violate 35 U.S.C. § 292, by marking and continuing to mark
23 unpatented articles . . . with expired patent numbers that do not cover (nor ever did cover) those
24 products, with an intent to deceive the public." (Compl. ¶ 204, ECF No. 92)  The Court previously
25 dismissed this claim in light of the recent amendments to § 292. (Order, Oct. 17, 2011, ECF No.
26 87)
27 //
28 //

1    Section 292, as amended, states that "[t]he marking of a product . . . with matter relating to
2 a patent that covered the product but has expired is not a violation of this section." Leahy-Smith
3 America Invents Act, Pub. L. No. 112-29, sec. 16(b), § 292, 125 Stat. 284, 329 (2011). Although
4 McCabe's false marking allegations still refer to marking products with expired U.S. Patent Nos.
5 4,171,661 and 4,497,236, McCabe adds allegations in the SAC that the expired patent numbers
6 never covered the products Defendants marked with those patents. (Compl. ¶ 204, ECF No. 92)
7 Thus, to the extent that McCabe now alleges that Defendants marked their products with patent
8 numbers that never covered those products—regardless of whether the patents had
9 expired—McCabe has cured the deficiencies noted in the prior complaint.

10   Defendants contend, however, that the false marking claim remains deficient because
11 McCabe fails to allege that he was damaged in any way—much less competitively—by
12 Defendants' conduct. (Mot. to Dismiss 3–9, ECF No. 98) As the Court noted in its prior Order, in
13 order to have standing to sue under § 292, McCabe must allege that he has "suffered a competitive
14 injury as a result of a violation of this section." 35 U.S.C. § 292(b).

15   The Ninth Circuit has yet to interpret "competitive injury" as used in this context.
16 Relatedly, however, in the Lanham Act context, 15 U.S.C. § 1125(a)(1)(B), the Ninth Circuit has
17 defined "competitive injury" as "harmful to the plaintiff's ability to compete with the defendant."
18 *Barrus v. Sylvania*, 55 F.3d 468, 470 (9th Cir. 1995); *see also* BLACK'S LAW DICTIONARY (9th ed.
19 2009) (defining "competitive injury" as "[a] wrongful economic loss caused by a commercial
20 rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to
21 compete with a defendant, caused by the defendant's unfair competition"). Under this guidance,
22 the Court reads § 292 as requiring that a plaintiff allege the defendant's false marking was harmful
23 to the plaintiff's ability to compete with the defendant.

24   McCabe contends that he has alleged competitive injury in the SAC. Specifically, McCabe
25 alleges that he "has been unable to efficiently reach license agreements with licensees for his
26 patents due to, at least in part, Defendants' false marking activities," (SAC ¶ 253, ECF No. 92),
27 and that he "has been precluded from commercializing his tremolo systems due to, at least in part,
28 Defendants' false marking activities," (*id.* ¶ 254). Other than these bare-bone allegations that

McCabe was unable to procure licensees "at least in part" due to Defendants' false marking, McCabe nowhere alleges facts supporting these conclusory statements, however.

For example, McCabe spills much ink on how several other entities were allegedly defrauded when they entered into license agreements with Defendants. (*Id.* ¶¶ 92–165) But what McCabe does not allege is telling: he does not allege that but for entering into those fraudulent agreements, those licensees would have entered into license agreements with McCabe. And indeed, McCabe does not even allege that those licensees were defrauded by Defendants' false marking. Rather, they were allegedly defrauded because the licensed patents were "invalid and unenforceable." (*See e.g.*, *id.* ¶ 92)

The additional allegations McCabe points to do nothing to bolster his argument. In particular, McCabe references a letter he received from a third-party manufacturer. That letter indicates that the manufacturer "was going forward with a licensing agreement with [McCabe]," but that he was unwilling to manufacture McCabe's products in light of the "patent issues" McCabe was having with Defendants. (*Id.* ¶ 255) Although this letter shows that McCabe sought and might have obtained licensing agreements, the letter does not show that McCabe lost this licensing opportunity due to Defendants' false marking. Rather, McCabe lost the licensing opportunity due to the "patent issues" he had with Defendants—namely, that Defendants allegedly infringed McCabe's patents.[2]

Thus, the Court finds that McCabe has not alleged a "competitive injury" as is required by § 292. Accordingly, Defendants' motion to dismiss the sixth claim for false marking is **GRANTED**.

## B. Lanham Act Section 43(a)

In his SAC, McCabe adds a claim for false advertising in violation of section 43(a) of the Lanham Act. To state a claim for violation of section 43(a) if the Lanham Act, McCabe must establish the following elements:

---

[2] McCabe's additional allegations that Defendants have "publicly disparaged McCabe at NAMM shows," (SAC ¶ 272, ECF No. 92); "intimidated competitors and customers of competitors through unjustified legal threats," (*id.* ¶ 278); and "engaged in predatory pricing," (*id.* ¶ 279) also do nothing to support his competitive injury argument. None of these acts show that McCabe was competitively injured due to Defendants' acts of false marking.

> (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sale from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product.

*Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 n.4 (9th Cir. 2000)).

Importantly, the Ninth Circuit has held that in order to have standing under the "false advertising" prong of section 43(a) of the Lanham Act "a plaintiff must show: (1) a commercial injury based upon a misrepresentation about a product; and (2) that the injury is 'competitive,' or harmful to the plaintiff's ability to compete with the defendant." *Jack Russell Terrier Network v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1037 (9th Cir. 2005) (quoting *Barrus*, 55 F.3d at 470).

The Court has already determined that McCabe has failed to sufficiently allege any "competitive injury." Thus, for the same reasons McCabe's false marking claim fails, his Lanham Act claim fails as well. Accordingly, the Court **GRANTS** Defendants' motion to dismiss McCabe's Lanham Act claim.

### C. *California Business & Professions Code § 17200,* et seq.

California's UCL prohibits acts of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *see also In re Pomona Valley Med. Grp. Inc.*, 476 F.3d 665, 674 (9th Cir. 2007). "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Podolsky v. First Healthcare Corp.*, 58 Cal. Rptr. 2d 89, 98 (Cal. Ct. App. 1996)

California's UCL "'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200." *Farmers Ins. Exch. v. Super. Ct. of L.A. Cnty.*, 826 P.2d 730, 734 (Cal. 1992) (citation omitted). A business practice that violates almost any federal, state, or local law is an "unlawful practice" under section 17200. *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007); *Saunders v. Super. Ct. of L.A. Cnty.*, 33 Cal. Rptr. 438, 441 (Cal. Ct. App. 1994). In addition, a business

practice may be "unfair or fraudulent in violation of the UCL even if the practice does not violate any law." *Olszewski v. Scripps Health*, 135 Cal. Rptr. 2d 1, 25 (Cal. 2003).

McCabe alleges that Defendants violated all three prongs of the UCL. McCabe sets forth a litany of alleged misdeeds by Defendants, including marking their products with expired, invalid, or unenforceable patent numbers, (SAC ¶¶ 259–60, ECF No. 92); "restrain[ing] trade and stifl[ing] competition," (*id.* ¶ 261); (*see also id.* ¶¶ 262–63, 265); licensing and enforcing knowingly invalid and unenforceable patent claims, (*id.* ¶¶ 264–66); violating professional rules of conduct, (*id.* ¶¶ 267–68)[3]; and defrauding and deceiving licensees, (*id.* ¶¶ 269–71).

Here, McCabe's SAC fails to state a claim under any of the three UCL prongs. As the Court has already determined, the underlying claims asserted by McCabe fail, and so too must "the derivative UCL" claim fail. *Price v. Starbucks Corp.*, 122 Cal. Rptr. 3d 174, 182 (Cal. Ct. App. 2011). McCabe's claim under the unfairness prong fails as well. All of McCabe's allegations with regard to the unfairness prong are purely conclusory. Nowhere in the SAC does McCabe allege any factual basis for those assertions, nor any connection between Defendants' conduct and how that conduct restrains trade or inhibits competition. *See e.g.*, *Khoury v. Maly's of Cal., Inc.*, 17 Cal. Rptr. 2d 708, 712 (Cal. Ct. App. 1993).

As to McCabe's allegations that Defendants have defrauded and deceived licensees, the Court agrees with Defendants that McCabe has not demonstrated that he has personally suffered any injury as a result of these allegedly fraudulent licensing agreements. *See United Investors Life Ins. Co. v. Waddell & Reed, Inc.*, 23 Cal. Rptr. 3d 387, 389 (Cal. Ct. App. 2005) (indicating that a plaintiff must have "suffered injury in fact and ha[ve] lost money or property" to bring an unfair competition action). As explained, McCabe has not established that but for Defendants' defrauding of these licensees, the licensees would have obtained licenses from McCabe. *See supra*

---

[3] The Court doubts that McCabe can "borrow" a violation of an ethical rule of professional conduct to state a UCL "unlawful" claim. *See* WILLIAM L. STERN, BUS. & PROF. C. § 17200 PRACTICE, § 3:105–106 (The Rutter Group 2006); *CRST Van Expedited.*, 479 F.3d at 1107; *Saunders v.*, 33 Cal. Rptr. at 441. Moreover, McCabe fails to allege this violation or the Federal Rule of Civil Procedure 11 violation with sufficient particularity to withstand a motion to dismiss.

1   at 10.  Thus, McCabe has not alleged any injury sufficient to bring the instant UCL claim.[4]

2   Because the Court concludes that the SAC fails to state a claim for unlawful, unfair, or
3   fraudulent business practices under section 17200, Defendants' motion to dismiss McCabe's UCL
4   claim is **GRANTED**.

## CONCLUSION

6   For the reasons stated above, Defendants' motion to dismiss for lack of personal
7   jurisdiction over Defendant Lerner David is **DENIED**, and Defendants' motion to dismiss the
8   sixth through eighth claims of the SAC is **GRANTED**.  These claims are **DISMISSED**
9   **WITHOUT PREJUDICE**.[5]  If McCabe wishes, he may file an amended complaint within
10  fourteen days after this Order is electronically docketed.

11  **IT IS SO ORDERED**.

13  DATED: April 23, 2012

14  Honorable Janis L. Sammartino
    United States District Judge

---

[4] McCabe apparently contends that the fact that he licenses several of his active U.S. Patents suggests that he "plausibly would have been able to license his patents more extensively had not Defendants . . . fraudulently induced these entities into licensing Rose's patents instead of McCabe's patents." (Resp. in Opp'n 12, ECF No. 109 (citing (SAC ¶ 74, ECF No. 92)))  The SAC makes no connection between the patents Defendants licensed to these entities and the patents owned and licensed by McCabe, however.  Indeed, taking McCabe's allegations as true, if Defendants' licensed patents were invalid as anticipated, it is more likely that the licensees would seek licenses from the holders of the prior art patents, not McCabe.  As such, McCabe fails to allege even a "plausible chain of injury."  (*Id.* at 14)

[5] Although the Court has already given McCabe an opportunity to cure the deficiencies noted in his complaint, because the Court is not convinced that "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency," *Schreiber Distrib.*, 806 F.2d at 1401, the Court will give McCabe an additional opportunity to plead competitive injury.